UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **IN RE TEXAS PETROLEUM INVESTMENT CO. as owner and operator of the M/V MICHELLE** | : | **CIVIL ACTION NO. 2:17-cv-0263** |
| | : | **UNASSIGNED DISTRICT JUDGE** |
| | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Summary Judgment [doc. 58] filed by defendant JIREH Oilfield Services, LLC ("JIREH") and opposed by claimant Gentry Hebert. Doc. 70. Hebert's employer, Prosper Operators, Inc., and its worker's compensation insurer, Gray Insurance Company, oppose the motion by adopting Hebert's briefing. Doc. 71. The motion has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636.

### I.
#### BACKGROUND

This litigation arises from injuries incurred by Hebert on September 3, 2015, while he was working as an employee of Prosper Operators, Inc. ("Prosper") on assignment to Texas Petroleum Investment Company ("TPIC") as a crewmember of the M/V Michelle in Cameron Parish, Louisiana. *See* doc. 24, att. 3, pp. 1–6 (state court complaint). Hebert alleges in relevant part that, as he was opening a valve to bleed pressure from a leaking gas lift line, "the ruinous, defectively manufactured, constructed, assembled, installed, and/or maintained swedge [*sic*], collar, two inch

. . . pipe riser, pressure gauge, bleeder valve and its appurtenances exploded," resulting in the loss of Hebert's right leg. *Id.* at 6.

On September 2, 2016, Hebert filed a petition for damages against vessel owner TPIC; his employer Prosper Operators, Inc. ("Prosper") and Prosper's worker's compensation insurer, Gray Insurance Company; JIREH, which allegedly "negligently constructed, assembled, and/or installed the subject swedge [*sic*], collar, two inch (2") rise, pressure gauge, bleeder valve, and its appurtenances;" and Phoenix Forge Group, LLC ("Phoenix"), which allegedly manufactured the swage and collar; in the 38th Judicial District Court, Cameron Parish, Louisiana. Doc. 24, att. 3.

TPIC, as owner and operator of the M/V Michelle, filed a complaint for exoneration from or limitation of liability in this court on February 3, 2017. Doc. 1. The other parties then filed answers and claims in this proceeding, to which TPIC has responded with its own answers and cross-claims. JIREH now moves for summary judgment, asserting that Hebert cannot meet his burden of proof on any theory of JIREH's liability. Doc. 58, att. 1. In its reply it also objects to Hebert's response and statement of facts as inadequately supported under Federal Rule of Civil Procedure 56(c)(1). Doc. 78.

## II.
### SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id*.

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 106 S.Ct. at 2511 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S.Ct. 2097, 2110 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

### III.
#### APPLICATION

#### A. *Rule 56(c) Objections*

JIREH objects to Hebert's opposition, including the proposed "issues of fact and uncontested facts" submitted therewith, because those asserted issues are not supported by citation to competent summary judgment evidence as required under Federal Rule of Civil Procedure 56(c)(1). Doc. 78, pp. 1–4. It also asserts that certain exhibits should be excluded under Federal Rule of Civil Procedure 56(c)(2) as inadmissible hearsay and otherwise unreliable. *Id.* at 3–4.

### 1. Failure to support factual positions

Under Rule 56(c)(1), a party's factual positions on a motion for summary judgment must be supported by (1) citations to the record, (2) showing that the materials cited do not establish the absence or presence of a genuine dispute, or (3) showing that an adverse party cannot produce admissible evidence to support the fact. Hebert provides a statement of material facts where there exists a genuine issue to be tried. Doc. 70, att. 2. While he does not provide citations for these issues in that filing or explanations of why the court should otherwise accept them, he repeats the propositions throughout his brief and cites the record there. *See* doc. 70, att. 1. Accordingly, the court does not accept all contentions offered in Hebert's statement but instead evaluates these individually as offered and supported in the memorandum.

### 2. Inadmissible Evidence

"Although the substance or content of the evidence submitted to support or dispute a fact on summary judgment must be admissible, the material may be presented in a form that would not, in itself, be admissible at trial." *Lee v. Offshore Logistical and Transp., LLC*, 859 F.3d 353, 355 (5th Cir. 2017) (cleaned up). Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Such an objection "functions much as an objection at a trial," with the burden "on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." *Id.* (quoting Fed. R. Civ. P. 56, advisory committee note to 2010 amendment).

JIREH objects to Exhibits 6 and 7 of Hebert's opposition, which are an excerpt from the deposition of TPIC corporate representative Chris Sanfilippo and Sanfilippo's handwritten notes from interviews with Michael L'Hoste and Norman East (who were then working as operators for Prosper) in September 2015, after the accident. Doc. 70, atts. 8 & 9. It also objects to a manual

attachment submitted by Hebert, which is a post-accident training video produced by TPIC and describing the cause of the accident. Hebert has not sought leave to file a sur-reply addressing these objections. Because the exhibits would not alter the court's recommendation below, we will not determine their admissibility and instead simply decline to consider them at this stage.

### B. *Motion for Summary Judgment*

Hebert asserts that JIREH is liable under general maritime law and theories of negligence and strict liability for selling and/or negligently installing, assembling, constructing, maintaining, repairing, and/or failing to warn of the condition of the "the swedge [*sic*], collar, two inch (2") pipe riser, pressure gauge, bleeder valve and its appurtenances," resulting in the explosion of these parts and causing Hebert's injuries Doc. 20, ¶¶ 26, 29–31.

JIREH moves for summary judgment based on assertions that, after two years of discovery, Hebert "cannot meet his burden of proof to show that JIREH either constructed or assembled [those parts] or maintained any of the foregoing in its normal course of business." Doc. 58, att. 1, p. 6. Alternatively, it asserts that even if Hebert can prove these allegations, "there has been no evidence that the gas lift line was constructed or assembled negligently or unreasonably constructed in a dangerous manner which led to [Hebert's] injuries." *Id.*

Hebert responds with assertions that JIREH replaced a riser package on the subject lift line. As such, it is at fault for his injuries because the design of the replacement riser package and/or the negligent manner in which it was assembled or installed caused the package to fail during a routine "block and bleed" procedure conducted by Hebert, causing the explosion that led to the loss of his leg. Doc. 70, att. 1, pp. 15–18.

General maritime law is "an amalgam" of common law rules, modifications, and maritime-specific creations. *Vickers v. Chiles Drilling Co.*, 822 F.2d 535, 538 (5th Cir. 1987). For products

liability claims, the Fifth Circuit applies the substantive law outlined in the Restatement (Second) of Torts. *Id.*; *see also Pavlides v. Galveston Yacht Basin, Inc.*, 727 F.2d 330 (5th Cir. 1984). To prevail on such a claim, the plaintiff must show (1) that the defendant sold or manufactured a product; (2) that the product was unreasonably dangerous or defective when it left the defendant's control; and (3) that the defect caused the plaintiff's injury. *Penn Maritime, Inc. v. Rhodes Electronic Svcs., Inc.*, 41 F.Supp.3d 507, 524 (E.D. La. Aug. 19, 2014); *see also Transco Synd. No. 1, Ltd. v. Bollinger Shipyards, Inc.*, 1 F.Supp.2d 608, 613–14 (E.D. La. 1998) (noting that these provisions extend to manufacturers).

For general negligence claims, the plaintiff must prove the following elements: (1) the defendant owed a duty to the plaintiff; (2) the defendant breached that duty; (3) the plaintiff suffered damages; and (4) the defendant's breach caused those damages. *In re Great Lakes Dredge & Dock Co., LLC*, 624 F.3d 201, 211 (5th Cir. 2010). The defendant's duty is based on the foreseeability of the injury. *Clay v. ENSCO Offshore Co.*, 2016 WL 8256739, at *3 (E.D. La. Apr. 22, 2016) (citing *Daigle v. Point Landing, Inc.*, 616 F.2d 825 (5th Cir. 1980)). Under general principles of negligence law, "a plaintiff is owed a duty of ordinary care under the circumstances." *Daigle*, 616 F.2d at 827.

JIREH maintains that no affirmative evidence connects it to the construction, assembly, installation, or maintenance of the subject lift line or riser package. Gentry Hebert admitted that, while JIREH ordinarily did the work alleged above for TPIC, a company called Davies Construction, also did some of the same work depending on JIREH's pricing and availability. Doc. 58, att. 4, pp. 13–15. Neither Gentry Hebert nor his father, Troy Hebert (who served as field foreman for TPIC) could affirmatively identify JIREH as the contractor who installed any part of the subject gas lift line or worked on the riser package. *Id.*; doc. 58, att. 5, pp. 3–4. Troy Hebert

also admitted that Prosper and TPIC, rather than JIREH, had maintenance responsibilities for the field. Doc. 58, att. 5, p. 4. JIREH's president, Curtis Stains, declared that he found no work tickets showing that his company performed construction, assembly, or installation of any of the alleged parts for the subject lift line. Doc. 58, att. 6. He further stated that JIREH made and kept such tickets in the regular course of business to account for all work performed for its customers, including TPIC. *Id.*

Richard Moorehead,[1] a JIREH employee who testified as one of the company's two corporate representatives, stated that he personally installed and assembled riser packages at TPIC's field from 2010 to 2015 and that he worked at that field daily during that time. Doc. 70, att. 6, pp. 2–5, 9, 23, 25. Without seeing a work ticket, he stated, he could not be sure whether he had ever worked on the subject lift line.[2] *Id.* at 5. However, he could not say whether any other company performed this kind of work for TPIC in the relevant field during the relevant time period. *Id.* Furthermore, he admitted that several of the tickets contained general entries such as "worked as ordered" and would not reflect the specific activities performed. *Id.* at 7–9. Norman East testified that he worked as an operator for Prosper in the subject field location at the time of Hebert's accident and that, to the best of his knowledge, it had been "years" – possibly as far back as 2008 – since the subject lift line or the swage on the riser package had been changed. Doc. 58, att. 7, pp. 2–4. He also testified that he had been present when the riser was originally assembled and installed. Doc. 70, att. 5, pp. 3–4. He could not recall which company's crew completed this work but indicated that it was not a Prosper or TPIC crew. *Id.* Michael L'Hoste (another former

---

[1] Hebert challenges Moorehead's credibility based on his admission that he is a three-time convicted felon. *See* doc. 70, att. 6, pp. 10–17. This fact goes to the weight of his testimony, which the court does not consider on summary judgment. Instead, we simply review all evidence in the light most favorable to Hebert.

[2] Moorehead provided his declaration four months before the deposition. *See* doc. 58, att. 9. He stated there that he did not perform any work on the subject lift line in 2015 and that there would have been a work ticket for any work that he did for JIREH did on that line. *Id.*

Prosper operator) testified that he believed a JIREH crew replaced bleeder valves,[3] including the one on the subject lift line, in the field in 2015. Doc. 70, att. 11, pp. 2–4. He also stated that he knew that the valves had been recently replaced due to their appearance, but could not say which crew would have done the work. *Id.* at 4. Gentry Hebert testified that he was told by Troy Hebert that the riser package had been changed "within a couple [of] months." Doc. 78, att. 1, p. 3. He stated that he trusted Troy's opinion because "Troy runs [that] field," but he had no personal knowledge of the work. *Id.* Troy Hebert guessed that JIREH had assembled and installed the riser package "[b]ecause they're, basically, the only ones that did that type [of] work for us."[4] Doc. 70, att. 7, pp. 2–3.

None of JIREH's evidence is sufficient to exclude its alleged role relating to the lift line, including replacement of the riser package. JIREH asserts that the absence of a work ticket is proof of the absence of such work. However, Moorehead's testimony undermines the accuracy of these tickets as records of work JIREH performed for TPIC. JIREH's witnesses only provide equivocal admissions about their ability to recall the status of the lift line and the company's role/lack thereof at the site, and none is able to outright deny that such work was done. This is insufficient to show that no genuine issue of fact exists as to JIREH's role.

JIREH also contends that Hebert cannot produce any evidence that JIREH was negligent in its performance of any work on the lift line. In opposition to the motion Hebert particularizes

---

[3] According to Moorehead's testimony, this replacement work related to the riser packages. *See* doc. 70, att. 6, p. 2.
[4] Troy Hebert testified that he could not recall being present when this work was done or having any conversations with a JIREH employee about the work, but that he knew it had been replaced recently "because you can tell by the corrosion and stuff on it." Doc. 70, att. 7, p. 3. Michael L'Hoste also testified, as described above, that he believed parts of the riser package had recently been replaced because they "looked super brand new," while the swage and the rest of the pipe were "rusted and rotten." Doc. 70, att. 11, p. 4. Gentry Hebert testified that he only knew from Troy's statement that the riser had been changed, and that he would not have been able to guess the riser's age based on its coloration because the salt water caused rapid corrosion. Doc. 78, att. 1, pp. 3–5. JIREH attempts to use these statements to show Gentry Hebert's inability to provide factual support for his claim. However, JIREH has not met its initial burden on this motion and the conflicts in testimony on this and other points instead point to its inability to do so.

his negligence allegations as follows, asserting that JIREH is liable for his injuries because it (1) negligently designed, assembled, and installed the subject riser package or assisting Norman East with its design, assembly, and installation; (2) failed to replace the original swage during this time, despite the fact that the swage "had dull, corroded, rusted and weakened threads" at the time the riser package was replaced; (3) failed to weld the riser package component parts together and to the swage, and negligently threading the riser package "onto the deteriorated, dull, corroded, rusted, and weakened threads" of the original swage; and (4) negligently designed the replacement riser package, in a manner that caused an increase in torque pressure to be applied to the weakened swage threads and the riser package's threaded collar, which increased the risk of catastrophic failure. Doc. 70, att. 1, pp. 15–18.

JIREH points to Gentry Hebert's testimony that, based on his inspection of the riser and gas lift line prior to the accident, the only physical defect appeared to be corrosion and that the part otherwise appeared "safe" and "okay to do work on." Doc. 58, att. 4, pp. 10–11. Troy Hebert testified that he operated the subject riser package the week before the accident and that it was working as designed. Doc. 58, att. 5, pp. 4–5. He also stated that, to his knowledge, there had been no issue with the riser prior to the accident. *Id.* L'Hoste testified that while some parts appeared brand new, the lift line and swage were "rusted and rotten." Doc. 70, att. 11, p. 4.

JIREH's attempts to invert the burdens due on this motion are unavailing. The Heberts' statements are insufficient to show no genuine issue of material fact as to the manner in which JIREH allegedly performed the work or its connection to the accident, and JIREH has also failed to show no genuine issue of material fact on whether it did the work in question. Accordingly, JIREH has not shown that it is entitled to judgment as a matter of law on these claims.

## IV.
### CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion for Summary Judgment [doc. 58] be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 22nd day of May, 2019.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE